PETITION FOR WRIT OF HABEAS CORPUS: 28 USC §2254 (Rev. 10/99)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE __SOUTHERN_____ DISTRICT OF TEXAS

_____BROWNSVILLE_____ Division

United States District Court
Southern District of Texas
FILED

DEC 0 2 2002

Michael N. Milby
Clerk of Court

### PETITION FOR A WRIT OF HABEAS CORPUS BY A
### PERSON IN STATE CUSTODY

B-02-226

| | |
|---|---|
| __OSCAR RODRIGUEZ GARZA_____ | __McCONNELL UNIT  TDCJ-ID_____ |
| PETITIONER | CURRENT PLACE OF CONFINEMENT |
| (Full name of Petitioner) | |
| | #568139 |
| VS. | PRISONER ID NUMBER |
| __JANIE COCKRELL, Director, TDCJ-ID_____ | |
| RESPONDENT | CASE NUMBER |
| (Name of TDCJ Director, Warden, Jailor, or authorized person having custody of petitioner) | (Supplied by the Clerk of the District Court) |

## INSTRUCTIONS - READ CAREFULLY

1.  The petition must be legibly handwritten or typewritten, and signed by the petitioner, under penalty of perjury. Any false statement of an important fact may lead to prosecution for perjury. Answer all questions in the proper space on the form.

2.  Additional pages are not allowed except in answer to questions 11 and 20. Do not cite legal authorities. Any additional arguments or facts you want to present must be in a separate memorandum.

3.  When the Clerk of Court receives the $5.00 filing fee, the Clerk will file your petition if it is in proper order.

4.  If you do not have the necessary filing fee, you may ask permission to proceed *in forma pauperis*. To proceed *in forma pauperis*, (1) you must sign the declaration provided with this petition to show that you cannot prepay the fees and costs, and (2) if you are confined in TDCJ-ID, you must send in a certified *In Forma Pauperis* Data Sheet from the institution in which you are confined. If you are in an institution other than TDCJ-ID, you must send in a certificate completed by an authorized officer at your institution certifying the amount of money you have on deposit at that institution. If you have access or have had access to enough funds to pay the filing fee, then you must pay the filing fee.

5.  Only judgments entered by one court may be challenged in a single petition. If you want to challenge judgments entered by different courts, either in the same state or in different states, you must file separate petitions as to each court.

6.  Include all your grounds for relief and all the facts that support each ground for relief in this petition.

7.  When you have finished filling out the petition, mail <u>the original and two copies</u> to the Clerk of the United States District Court for the federal district within which the State court was held which convicted and sentenced you, or to the federal district in which you are in custody. A "VENUE LIST," which lists U.S. District Courts in Texas, their divisions, and the addresses for the clerk's office for each division, is posted in your unit law library. You may use this list to decide where to mail your petition.

8.  Petitions that do not meet these instructions may be returned to you.

---

## PETITION

### What are you challenging? (Check only one)

XXXXXX    ~~A judgment of conviction or sentence,~~ OUT-OF-TIME APPEAL (STATE COURT)    (Answer Questions 1-4, 5-12 & 20-23)
          probation or deferred-adjudication probation
☐         A parole revocation proceeding.    (Answer Questions 1-4, 13-14, & 20-23)
☐         A disciplinary proceeding.    (Answer Questions 1-4, 15-19 & 20-23)

### All petitioners must answer questions 1-4:

1.  Name and location of the court (district and county) which entered the conviction and sentence that you are presently serving or that is under attack:
    _____138th Judicial District Court, Cameron County, Texas_____

2.  Date of judgment of conviction: _____November 2nd, 1990_____

3.  Length of sentence: _____LIFE IN PRISONMENT_____

4.  Nature of offense and docket number (if known): _____ATTEMPTED MURDER_____

---

### Judgment of Conviction or Sentence, Probation or Deferred-Adjudication Probation:

5   What was your plea? (Check one)

    XXXXX    Not Guilty    ☐    Guilty    ☐    Nolo contendere

6.  Kind of trial: (Check one) XXXXX Jury    ☐    Judge Only

**CONTINUED ON NEXT PAGE**

7.     Did you testify at the trial?  ☒☒☒   Yes          ☐     No

8.     Did you appeal the judgment of conviction?          ☐    Yes  ☒☒☒☒☒☒No

9.     If you did appeal, in what appellate court did you file your direct appeal?
       **ANDERS BRIEF**

**INTERMEDIATE APPELLATE** ____ Cause Number (if known) **13-93-176-CR**
**COURT - SAN ANTONIA, TEXAS**

       What was the result of your direct appeal (affirmed, modified or reversed): **affirmed**

       What was the date of that decision?  **unknown** _____

       If you filed a petition for discretionary review after the decision of the court of appeals,
       answer the following:

       Result:  **none, atty filed frivolous (ANDERS BRIEF) brief**

       Date of result:  **none** _____ Cause Number (if known):  **none** _____

       If you filed a petition for *writ of certiorari* with the United States Supreme Court, answer the
       following:

       Result:  **NONE** _____

       Date of result:  **NONE** _____

10.    Other than a direct appeal, have you filed any petitions, applications or motions from this
       judgment in any court, state or federal? This includes any state application for writ of habeas
       corpus that you may have filed.

       ☒☒☒☒☒   Yes          ☐     No

11.    If your answer to 10 is "Yes," give the following information:

       Name of court:  **Texas Court Criminal Appeals** ____

       Nature of proceeding:  **PETITION FOR OUT-OF-TIME APPEAL**

       Cause number (if known):  **90-CR-960-B**

       Date (month, day and year) you filed the petition, application or motion as shown by a file-
       stamped date from the particular court.
       _____  **MARCH, 1993** _____

       Grounds raised:  **INEFFECTIVE ASSISTANCE OF COUNSEL (NO APPEAL)**

       ____ ☒☒☒☒☒ **APPOINTED COUNSEL FAILED TO FILE DIRECT APPEAL**

                              - 3 -                    CONTINUED ON NEXT PAGE

Date of final decision: _____ **April, 1993** _____

Name of court that issued the final decision: _____ **Court of Criminal Appeals**

As to any _second_ petition, application or motion, give the same information:

Name of court: ___ **Texas Court of CRIMINAL APPEALS** _____

Nature of proceeding: **2nd PETITION FOR OUT-OF-TIME APPEAL** _____

_____

Date (month, day and year) you _filed_ the petition, application or motion as shown by a file-stamped date from the particular court.
_____ **8th Day of AUGUST, 2000** _____

Grounds raised: **INEFFECTIVE ASSISTANCE OF COUNSEL,Direct Appeal**

_____ **Court apppointed attorney filed  Anders brief in first**

_____ **GRANTED OUT-OF-TIME APEAL when there were automatic**
_____ **Reversable errors in jury trial** _____

Date of final decision: **October 3rd, 2002** _____

Name of court that issued the final decision: _____ **Texas Court of Criminal Appeals**

_If you have filed more than two petitions, applications, or motions, please attach an additional sheet of paper and give the same information about each petition, application, or motion._

12.   Do you have any future sentence to serve after you finish serving the sentence you are attacking in this petition?
                              ☐    Yes    **XXXXXXXX** No

(a)   If your answer is "yes," give the name and location of the court that imposed the sentence to be served in the future:

_____ **N/A** _____

_____ **N/A** _____

(b)   Give the date and length of the sentence to be served in the future: _____ **N/A** _____

_____ **N/A** _____

(c)   Have you filed, or do you intend to file, any petition attacking the judgment for the sentence you must serve in the future?

☐    Yes    **XXXXXXX**    No

**- 4 -**                                        **CONTINUED ON NEXT PAGE**

**Parole Revocation:**

13.    Date and location of your parole revocation: _____ **N/A** _____

14.    Have you filed any petitions, applications, or motions in any state or federal court challenging your parole revocation?

        **N/A**

      ☐   Yes           XXXX   No

    If your answer is "yes," complete Question 11 above regarding your parole revocation.

**Disciplinary Proceedings:**

15.    For your original conviction, was there a finding that you used or exhibited a deadly weapon?   XXXXX Yes      ☐ No

16.    Are you eligible for mandatory supervised release?      ☐ Yes     XXXXX No

17.    Name and location of prison or TDCJ Unit that found you guilty of the disciplinary violation:

      **N/A**

    Disciplinary case number: _____ **N/A** _____

18.    Date you were found guilty of the disciplinary violation: _____ **N/A** _____

    Did you lose previously earned good-time credits?   XXXXX Yes      ☐ No

    Identify all punishment imposed, including the length of any punishment if applicable, any changes in custody status, and the number of earned good-time credits lost: **N/A**

      **N/A**

19.    Did you appeal the finding of guilty through the prison or TDCJ grievance procedure? **N/A**

      ☐   Yes           ☐   No

    If your answer to Question 19 is "yes," answer the following:

Step 1 Result: _____ **N/A** _____

      **N/A**

    Date of Result: _____ **N/A** _____

Step 2 Result: _____ **N/A** _____

      **N/A**

        CONTINUED ON NEXT PAGE

Date of Result: _____ **N/A** _____

## All applicants must answer the remaining questions:

20.    State <u>clearly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting them.

**CAUTION:**
<u>Exhaustion of State Remedies:</u> You must ordinarily present your arguments to the highest state court as to each ground before you can proceed in federal court.
<u>Subsequent Petitions:</u> If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

Following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement is a separate ground for possible relief. You may raise any grounds, even if not listed below, if you have exhausted your state court remedies. However, <u>you should raise in this petition all available grounds</u> (relating to this conviction) on which you base your belief that you are being held unlawfully.

<u>DO NOT JUST CHECK ONE OR MORE OF THE LISTED GROUNDS</u>. Instead, you must also STATE the SUPPORTING FACTS for ANY ground you rely upon as the basis for your petition.

(a)    Conviction obtained by a plea of guilty which was unlawfully induced, or not made voluntarily, or made without an understanding of the nature of the charge and the consequences of the plea.

(b)    Conviction obtained by the use of a coerced confession.

(c)    Conviction obtained by the use of evidence gained from an unconstitutional search and seizure.

(d)    Conviction obtained by the use of evidence obtained from an unlawful arrest.

(e)    Conviction obtained by a violation of the privilege against self-incrimination.

(f)    Conviction obtained by the prosecution's failure to tell the defendant about evidence favorable to the defendant.

(g)    Conviction obtained by the action of a grand or petit jury which was unconstitutionally selected and impaneled.

(h)    Conviction obtained by a violation of the protection against double jeopardy.

(i)    Denial of effective assistance of counsel.

(j)    Denial of the right to appeal.

(k)    Violation of my right to due process in a disciplinary action taken by prison officials.

- 6 -

CONTINUED ON NEXT PAGE

A.  **GROUND ONE:** <u>INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL</u>
See page 3 of attached Memoranum
See page 6, for 1st ground of constitutional error INEFFECTIVE
ASSISTANCE OF TRIAL COUNSEL (ground for out-of-time appeal)
Supporting FACTS (tell your story <u>briefly</u> without citing cases or law):

SEE PAGES  3 THRU 8 of ATTACHED

MEMORANDUM OF LAW

B.  **GROUND TWO:**  <u>INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL</u>
<u>Failure to object to unrecorded custodial interrogation</u>

Supporting FACTS (tell your story <u>briefly</u> without citing cases or law):
SEE PAGES 8 thru 15 of ATTACHED
MEMORANDUM OF LAW

C.  **GROUND THREE:**  <u>INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL</u>
<u>Failure to object to introduction of extraneous offenses</u>

Supporting FACTS (tell your story <u>briefly</u> without citing cases or law):
See PAGES 15 thru 21 of ATTACHED
MEMRANDUM OF LAW

- 7 -                                    CONTINUED ON NEXT PAGE

D.   **GROUND FOUR:** <u>INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL</u>

<u>Failure to object to improper impeachment with collateral</u>

<u>unadjudicated offenses</u>

Supporting FACTS (tell your story <u>briefly</u> without citing cases or law):

   SEE PAGES 21 thru 26 of ATTACHED

MEMORANDUM OF LAW

21.   Have you previously filed a federal habeas petition attacking the same conviction, parole revocation, or disciplinary proceeding that you are attacking in this petition?

☐   Yes          ☒☒☒☒☒☒   No

If your answer is "yes," give the date on which <u>each</u> petition was filed, the federal court in which it was filed, and whether the petition was (a) dismissed without prejudice or (b) denied.

N/A

N/A

N/A

22.   Are any of the grounds listed in paragraph 20 above presented for the first time in this petition?

☐   Yes          ☒☒☒☒   No

If your answer is "yes," state <u>briefly</u> what grounds are presented for the first time and give your reasons for not presenting them to any other court, either state or federal.

N/A

N/A

N/A

- 8 -                                    CONTINUED ON NEXT PAGE

23.    Do you have any habeas corpus proceedings or appeals now pending in any court, either state or federal, relating to the judgment or proceeding under attack?

☐    Yes         ~~XXXXX~~x    No

If "yes," identify each type of proceeding that is pending (i.e., direct appeal, art. 11.07 application, or federal habeas petition), the court in which each proceeding is pending, and the date each proceeding was filed.

_____N/A_____

_____N/A_____


Wherefore, petitioner prays that the Court grant him the relief to which he may be entitled.

_____NONE_____
Signature of Attorney (if any)

_____NONE_____

_____NONE_____

_____


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on **November 18th, 2002**_____ (month, date, year).


Executed on ___**November 18th, 2002**_____ (date).


_____
Signature of Petitioner (required)
**#568139, McConnell Unit**
**3001 So. Emily Dr.**
**Beeville, Texas – 78102**

Petitioner's current address: _____


-9-

WRIT NO. _____

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

_____

**OSCAR RODRIGUEZ GARZA,**
**Petitioner,**

Vs.

JANIE COCKRELL, Director,

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

INSTITUTIONAL DIVISION,
Respondent.

_____

**PRO-SE PETITION FOR WRIT OF HABEAS CORPUS**
**(Out-of-Time Appeal)**

_____

FILED IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION

_____

COLLATERAL ATTACK ALLEGING DENIAL OF EFFECTIVE ASSISTANCE
ON FIRST DIRECT APPEAL AS OF RIGHT
Original State Trial Cause No. 90-CR-960-B
Direct Appeal (ANDERS BRIEF) No. 13-93-176-CR
State 11.07 Habeas Corpus No. 90-CR-960-B

_____

OSCAR RODRIGUEZ GARZA, #568139. Petitioner Pro-se
McConnell Unit
3001 So. Emily Dr., Beeville, Texas - 78102

## TABLE OF CONTENT

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . ii

UNLAWFUL RESTRAINT . . . . . . . . . . . . . . . . . . . . 1

NATURE OF CASE, WITH PROCEDURAL HISTORY . . . . . . . . . . . . . .2

DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL
ON FIRST APPEAL AS OF RIGHT . . . . . . . . . . . . . . . . . .2,3

PETITIONER GARZA HAS THE CONSTITUTIONAL RIGHT
TO EFFECTIVE ASSISTANCE OF COUNSEL OF FIRST
APPEAL AS OF RIGHT . . . . . . . . . . . . . . . . . . . 3,4,5,6A,6B

GROUND OF ERROR #I . . . . . . . . . . . . . . . . . . . .6B,7,8

GROUND OF ERROR #II . . . . . . . . . . . . . . 8,9,10,11,12,13,14

GROUND OF ERROR #III . . . . . . . . . . . . .15,16,17,18,19,20,21

GARZA'S TESTIMONY . . . . . . . . . . . . . . . . . . . .16,17

GROUND OF ERROR #IV . . . . . . . . . . . .21,22,32,24,25,26

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . .26

CERTIFICATE OF VERIFICATION . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . .27

## TABLE OF AUTHORITIES CITED
### (in order of citation)

**CASES**                                                                **PAGES**

EVITTS Vs. LUCEY, 105 S.Ct. 830, at 831 (1985) . . . . . . . . . 3,4

LOMBARD Vs. LYNAUGHT, 868 F2d 1475 (5th Cir.,1989). . . . .4,5,6,7,8

DAVIS Vs. STATE, 687 S.W.2d 78 (Tx.App.5th Dist.,1985). . . . . . .9

GIFFORD Vs. STATE, 630 S.W.2d 387, at 390 (Tx.App.,1982). . . .13,14

ROMERO Vs. STATE, 800 S.W.2d 539 (Tx.Cr.app.,1990) . . . . . . . .14

ALEXANDER Vs. STATE, 740 S.W.2d 749,763 (Tx.Cr.App.1987),17,18,19,20

MORENO Vs. STATE, 711 S.W.2d 382,384 (Tx.App., 1986), . . . 19,20,24

SHIPMAN Vs. STATE, 604 S.W.2d 182 (Tx.Cr.App.,1980) . . . . . . . 25


TEXAS CODE CRIMINAL PROCEDURE ART. 11.07, 3(a)(b)(d) . . . . . . . 1

U.S. CONSTITUTION, 6th and 14th Amends . . . . . . . . . . . . . . 1

Texas Constitution Art. I, Sections 10 and 19 . . . . . . . . . . .1

TEXAS CODE CRIMINAL PROCEDURE, ART, 38.22, 3(a)(1) . . . . . . . . 8

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

OSCAR RODRIGUEZ GARZA,          §
            Petitioner,          §
                                 §
Vs.                              §    CAUSE No. _____
                                 §
JANIE COCKRELL, Director,        §
Texas Dep't Criminal Justice,    §
Institutional Division.          §
            Respondent.

PETITION FOR WRIT OF HABEAS CORPUS
(OUT-OF-TIME APPEAL)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Oscar Rodriguez Garza, Petitioner Pro-se in the above entitled and numbered Petition for Writ of Habeas Corpus (OUT-OF-TIME APPEAL), and respectfully submits said petition pursuant to 28 U.S.C.A. § 2254 of the Federal Rules of Civil Procedure, and in support thereof would show unto the Court as follows:

I.
UNLAWFUL CONFINEMENT
DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL

Oscar Rodriguez Garza, hereinafter petitioner, is being illegally and unlawfully restrained of his liberty in violation of his Sixth and Fourteenth Amendment Rights as guaranteed by the United States Constitution. Said illegal restraint is being imposed upon petitioner by Janie Cockrell, Director, Tex. Dep't Crim. Justice, Institutional Divsion.. Petitioner is presently so confined at the McConnell Unit, 3001 So. Emily Dr., Beeville, Texas - 78102.

## II.
## NATURE OF THE CASE
### WITH PROCEDURAL HISTORY

Petitioner was tried by jury, October 1st, 1990, upon a plea of not guilty to the charged offense of attempted murder. The jury returned a guilty verdict as charged in the indictment. The trial judge assessed punishment at life imprisonment. No Motion for New Trial was filed and no Direct Appeal was perfected.

On March 10th, 1993, the Texas Court of Criminal Appeals Granted Petitioner's Petition for Writ of Habeas Corpus which sought an OUT-OF-TIME APPEAL.

Attorney Nat Perez was appointed as appellate counsel January 1st, 1993, and pursuant to the Court of Criminal Appeal's Order notice of appeal was entered March 31, 1993.

On June 28th, 1993, Attorney Nate Perez, 847 E. Harrison Str. Brownsville, Texas - 78521, Ph. (210) 548-1213, advised Petitioner by letter that said attorney considered the appeal frivolous and subsequently submitted an ANDERS BRIEF.

## III.
### DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL ON
### FIRST DIRECT APPEAL

As stated above, Petitioner Garza did not obtain a timely direct appeal. His first direct appeal was obtained through the granting of a writ of habeas corpus, by the Texas Court of Criminal Appeals, which sought an **OUT-OF-TIME APPEAL**. Attorney Nat.

C. Perezwas ultimately appointed as appellate counsel and filed an ANDERS brief which advised the appellate court that attorney Perez reviewed the trial records and concluded in his professional opinion that no arguable grounds or issues existed in those records which would even remotely require reversal and a new trial.

As will be shown in the following brief with argument and authorities, Petitioner Garza's trial records contained several legitimate and valid grounds for reversal and new trial. Attorney Nat C. Perez's complete failure to argue such errors in a merit brief constitutes ineffective assistance of appellate counsel of the first magnitude and requires the GRANTING of an OUT-OF-TIME direct appeal.

IV.

**PETITIONER GARZA HAS THE CONSTITUTIONAL RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL ON FIRST
APPEAL AS OF RIGHT**

It cannot be disputed that Garza has a well established constitutional right to effective assistance of appellate counsel on his first direct appeal as of right. This is especially true in a State like Texas where there is a well established appellate process.

The United Stated Supreme Court, in EVITTS Vs. LUCEY, 105 S.Ct. 830 at 831 (1985), teaches as follows;

> **HELD:** The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. Pp. 833-841.
> (a) Nominal representation on an appeal as of right - like nominal representation at trial - does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all. A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an

attorney. The promise of DOUGLAS Vs. CALIF., 83 S.Ct. 814,
that a criminal defendant has a right to counsel on his
first appeal as of right - like the promise of GIDEON
Vs. WAINWRIGHT, 83 S.Ct. 793, that a criminal defendant
has right to counsel at trial - would be a futile gesture
unless it comprehended the right to effective assistance of
counsel. Pp. 833-838.
 (b) When a State opts to act in a field where its
action has significant discretionary elements, such as
where it establishes a system of appeals as of right
although not required to do so, it must nevertheless act in
accord with the dictates of the constitution, and, in
particular, in accord with the Due Process Clause. P. 838

The United States Fifth Circuit Court of Appeals, in a Texas

case, had no problem interpreting the above EVITTS holdings that a

Texas prisoner has a constitutional right to effective assistance of

appellate counsel on direct appeal. The Fifth Circuit Court of

Appeals in LOMBARD Vs. LYNAUGH, 868 F2d 1475 (1989), teaches as

follows;

at 1485;
 "An indigent criminal defendant has the constitutional
right to the effective assistance of counsel for his or her
first appeal as of right. See EVITTS Vs. LUCEY, 105
S.Ct. 830, 834-35 (1985). We must not permit a state court
to trespass upon this hallowed ground. . . . "

Having found the right to effective appellant counsel was

guaranteed the Fifth Circuit went on to determine what standard of

harmless analysis applied, that Court went on to teasch as follows:

 "An accused is constitutionally entitled to the
effective assistance of counsel on a direct appeal as of
right. EVITTS Vs. LUCEY, 105 S.Ct. 830 (1985). The primary
question here is whether or to what extent prejudice must
be shown from the denial of such right in order for the
accused to obtain habeas relief, although this is to some
extent intertwined with the nature and extent of the
denial.
 We conclude that as explained in more detail below,
there are non-frivolous issues which should have been
raised on direct appeal and that Lombard received
ineffective assistance of counsel on appeal because his
counsel only filed a brief which in substance said,

-4-

without explanation, that the appeal was without merit and
wholly failed to call attention to or discuss any of the
potential issues in the case. Under ANDERS Vs. CALIF., 87
S.Ct. 1396, 1400 (1967), as reiterated in the Supreme
Court's recent decision in PENSON Vs. OHIO, 109 S.Ct. 346,
350 (1988), even if appellate counsel determines the
appeal is frivolous she must, inter alia, file "a brief
referring to anything in the record that might arguably
support the appeal." WE recognize that in many instances
this can be a demanding task: if there is nothing of the
kind in the record , it is difficult to point to
something, and explaining why something is not an arguable
issue may in certain circumstances come perilously close
to arguing for the other side. But see McCOY Vs. COURT OF
APPEALS OF WISCONSIN, 108 S.Ct. 1895 (1988). However, we
are not now faced with attempting to resolve such enigmas,
for it is in any event clear that if, as here , there are
one or more indisputably nonfrivolous issues for appeal,
counsel must do more than simply file a wholly conclusory
"no merit" brief which points to nothing whatsoever in the
record. Because this is what Lombard's appellate counsel
did - and is all that he did - it is clear that Lombard was
denied effective assistance of counsel on appeal.

## NEED TO SHOW PREJUDICE

But, must Lombard demonstrate that this denial of the
effective assistance of counsel prejudiced him, at least in
the sense that had his counsel not been thus deficient his
conviction would likely have been reversed? PENSON provides
the proper framework for analysis in this connection. In
PENSON, the Court distinguished between two types of denial
of effective assistance of appellate counsel: first, those
in which the deficiency consists of failure to raise (or
properly brief or argue) one or more specific issues or the
like; and second, those in which there has been an actual
or constructive complete denial of any assistance of
appellate counsel. 109 S.Ct. at 354. In the first type of
case, prejudice must apparently be shown, as required by
STRICKLAND Vs. WASHINGTON, 104 S.Ct. 2052 (1984). In the
second type case, prejudice is presumed, and neither the
prejudice test of STRICKLAND nor the harmless error
analysis of CHAPMAN Vs. CALIF, 87 S.Ct. 824 (1967), is
appropriate. PENSON, 109 S.Ct. at 354. We had applied a
similar mode of analysis in HAMILTON Vs. McCOTTER, 772 F2d
171, 181-82 (5th Cir.,1985). See also RICALDAY
Vs. PROCUNIER, 736 F2d 203, 209 n. 6 (5th Cir.,1984). In
HAMILTON and RICALDAY, we held that the deficiency was of
the first type, and declined to grant relief because the
STRICKLAND prejudice test was not met (we do not consider
CHAPMAN).

Here, counsel's deficiencies clearly come closer to
fitting in the second or total denial of counsel category,
that of counsel committing one or more discrete lapses

from minimum professional standards. At the trial level, at least, it is clear that merely because counsel is physically present throughout does not necessarily mean that there has not been a total denial; of counsel. See U.S. Vs. CRONIC, 104 S.Ct. 2039, 2047 (1984)("if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversarial process itself presumptively unreliable"). Here, Cahoon did nothing to attempt to aid Lombard's appeal, beyond the initial perfecting of the appeal itself. We are hence comfortable in not requiring Lombard to meet the STRICKLAND standard of showing, at least, that there is a reasonable probability that his conviction would have been reversed had he had the effective assistance of appellate counsel."

The Fifth circuit went on to determine that the filing of an ANDERS, frivolous appeal brief when there were arguable legitimate issues for an appeal constituted ineffective assistance of appellate counsel. That Court held as follows:

". . . Here Cahoon never withdrew, and Lombard was never formally without counsel on his appeal; moreover, the Court of Criminal Appeals did not decide the case until it determined , after review of the record, that the appeal was "wholly frivolous." Further, as below noted, although there were clearly non frivolous issues which could have been urged on Lombard's appeal and we are unable to determine that Lombard's conviction would NOT have been reversed had he had effective assistance of appellate counsel, we are likewise unable to determine the converse. However, we conclude that these considerations do not suffice to require Lombard top show STRICKLAND-type prejudice; Lombard, in a functional sense, was afforded almost no appellate representation whatsoever, and there WERE nonfrivolous appeal issues which we cannot say with full confidence would not have resulted in reversal had they been raised and properly argued by competent appellate counsel. Lombard therefore need not, as he would have to if STRICKLAND, applied, discharge the burden of convincing us that, at the least, reversal was reasonably probable had he been properly represented on appeal[4]."

Petitioner Garza respectfully urges that he was allowed an out-of-time appeals and his appointed appellate counsel filed a "no merit" ANDERS brief contending that Garza's appeal was frivolous in

that there were no legitimate arguable issues to urge on the direct appeal. Petitioner Garza now asserts that there were several and numerous legitimate issues that could have been argued on the direct appeal. That his arguable issues are almost identical to those found in the above cited LOMBARD Vs. LYNAUGH, 868 F2d 1475 (5th Cir.,1989).

### V.
### PETITIONER GARZA'S CASE CONTAINED SEVERAL
### ARGUABLE GROUNDS OF ERROR FOR DIRECT APPEAL PURPOSES

**GROUND OF ERROR #I:**

### INEFFECTIVE ASSISTANCE OF COUNSEL

PETITIONER GARZA WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN SAID COUNSEL FAILED TO OBJECT TO PROSECUTOR'S STATEMENT DURING VOIR DIRE THAT PETITIONER GARZA'S INDICTMENT WAS ENHANCED WITH A PRIOR BURGLARY OF A HABITATION CONVICTION, AND SAID FAILURE TO OBJECT VIOLATED PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 19 OF THE TEXAS CONSTITUTION.

During the voir dire of the perspective jurors on the 36 member panel the prosecutor told the entire jury panel that Petitioner Garza's indictment contained an enhancement paragraph alleging a prior conviction for burglary of a habitation. See S.F., Vol. II, p. 14, which reflects the following voir dire statement by the prosecutor;

Lines 15 thru 24;
" I'd like to go into the range of punishment also. This is an enhancement. It's a first degree felony. The range of punishment in the first degree felony is five to 99 years or life and up to a ten thousand dollar fine.
Ordinarily an attempted murder is a second degree felony. However, in this case the defendant is being enhanced due to a prior burglary of a habitation, so that pushes it up to a first degree felony. Therefore, he faces a first degree felony range at punishment."

At the time the prosecutor informed Petitioner Garza's jury

panel that Garaz's indictment contained a prior conviction for burglary of a habitation as an enchancement element the law in Texas was well established and very clear and strictly prohibited the telling of the jury panel that the accused had an enchancement paragraph on his indictment or that the accused had a prior conviction.

In LOMBARD Vs. LYNAUGH, 868 F2d 1475 (5th cir.,1989) the Federal Appellate Court had no problem identifying the illegality of such vior dire misconduct and found Lombard's attorney to have been ineffective for failure to object to this exact same misconduct. The LOMBARD, Court held as follows: Id., at 1483:

> "Likewise, the claim of ineffective assistance of trial counsel was not frivolous. As noted in LOCKHART, 782 F2d 1275 (5th cir.,1986), a claim of ineffective assistance of trial counsel can be asserted on direct appeal in Texas. See 782 F2d at 1283 n. 14. If that claim had been properly asserted on appeal, it too may have led to a reversal of Lombard's conviction. As noted, Lombard contends that he was denied effective assistance of counsel at trial because Cahoon, as trial counsel, failed to object to: (1) the habitual offender comments by the trial court and the prosecutor's reading to the jury the indictment which contained several allegations of Lombard's prior convictions (see note 7, supra): and the improper admission of the extraneous armed robbery. In HEREDIA Vs. STATE, 508 S.W.2d 629 (Tx.Cr.App.1974), The Texas Court of Criminal Appeals found that reversal of a conviction is required where the trial court permits the jury to learn, at the commencement of the guilt or innocent stage of the trial, that the defendant has been convicted of one or more prior felony offenses alleged for enhancement, provided the defendant timely objects. See Article 36.01, Subdivision 1, Texas Code of Criminal Procedure.[10] See FRAUSTO Vs. STATE, 642 S.W.2d 506, 508-09 (Tx.Cr.App.1982). HEREDIA indicates, however, that such an objection may not be raised for the first time on appeal. See HEREDIA, 508 S.W.2d at 603. Thus Cahoon's failure to object at trial to the references to Lombard's prior convictions may well have been a costly error. Had the issue of trial counsel's ineffectiveness been raised on appeal, the Texas Court of Criminal Appeals might have

determined that such an error alone constituted ineffective assistance of counsel warranting reversal of the conviction."

The Fifth Circuit Court of appeals in LOMBARD, went on to further hold that it could not be determined beyond a reasonable doubt that the Texas Court of Criminal Appeals would not have reversed had Lombard's trial counsel properly and timely objected to the voir dire misconduct and therefore such failure was not harmless error.

Petitioner Garza also respectfully asserts that the exact same misconduct in the instant case constitutes ineffective assistance of trial counsel and the failure to brief the error on direct appeal constitutes ineffective assistance of appellate counsel and that the failure to brief the clearly identified error cannot be determined to be harmless error. Therfore, Garza urges that his request for an out-of-time direct appeal be GRANT on this error alone.

**GROUND OF ERROR #II:**

PETITIONER GARZA WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN SAID COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S INTRODUCTION OF THE RESULTS OF AN UNRECORDED CUSTODIAL INTERROGATION OF GARZA DURING THE GUILT AND INNOCENCE STAGE OF PETITIONER'S JURY TRIAL.

At the time of Petitioner Garza's jury trial in October of 1990, the law governing the use of unrecorded coustodial interrogation results was clearly setout in the Texas Ann. Vernon's Code of Criminal Procedure at Article 38.22, 3(a)(1) and states as follows;

     Sec. 3. (a) An oral statement of an accused made as a result of custodial interrogation is admissible against the accused in a criminal proceeding for the purpose of impeachment only and when:

(1) An electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is told that a recording is being made;

(3) prior to the statement but during the recording the accused is given a warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(4) the recording device was capable of making an accurate recording, that the operator was competent, and the recording is accurate and has not been altered;

(5) the statement is witnessed by at least two persons; and

(6) all voices on the recording are identified.

(b) Every electronic recording of any statement made by an accused during custodial interrogation must be preserved until its destruction is permitted by order of a district court of this state.

At the time of Petitioner Garza's jury trial the following is the clearly established definition of CUSTODIAL INTERROGATION, as so defined in DAVIS Vs. STATE, 687 S.W.2d 78 (Tx.App. 5th Dist.,1985) which provides as follows:

at p. 81,

"Custodial interrogation occurs when law enforcement officers initiate questioning after a person has been taken into custody or otherwise significantly deprived of freedom of action. MIRANDA Vs. ARIZONA, 86 S.Ct. 1602, 1612 (1966). Probable cause to arrest, subjective intent of the police, focus of the investigation, and the accused's subjective beliefs are relevant to determining whether the social worker's questioning occurred while appellant was "in custody." UNITED STATES Vs. PHELPS, 443 F2d 246, 247 (5th Cir.,1971)."

It cannot be disputed that the alleged shooting in the instant case occurred on May 11th, 1990, and that Petitioner Garza was arrested at his home at 10:30 AM on May 12th, 1990. See S.F. Vol. II, p. 22. Therefore Petitioner Garza was "in custody" as that term is defined in the above DAVIS, opinion.

On May the 13th, 1990, at 1:10 PM, at detective Jose Rubio's desk at the police station, and as the time frame indicates

-9-

Petitioner had already been arrested and in custody a full 24 hours. The trial record clearly establishes Garza being "in custody" as a matter of fact and as a matter of law.

On cross-examination the defense attroney asked the following questions of the interrogating detective, see S.F. Vol. II, page 40, which establishes:

> Q: Officer, in your experience at the police department, do you understand that you need to prepare the case well so that way you can uphold the conviction? Is that right?
> A: Yes, sir, correct.
> Q: But what was actually said to you was not taked down by a tape recorder, was it?
> A: No, sir, it wasn't. The department doesn't provide a tape recorder.
> Q: So what was said to you was something that you remember and what you decided to write down.
> A: If I -- to tell you the truth, sir, what happened was as I was writing the notes, immediately as I was writing on my legal pad, immediately after the notes, I typed out the statement myself right afterwards.

p. 40,

> Q: Did the defendant sign the statement?
> A: No, sir, he didn't sign the statement. He said he would rather take his chances in court, and he refused to sign a written statement."

As the trial record reflects, it cannot be disputed that Garza was in custody, was being interrogated by a detective, that Garza made only oral statements, that Garza refused to sign any typed statement allegedly prepared by the detective as a result of the custodial interrogation.

A close reading of the trial rcords of this allegedly oral statement from Petitioner Garza will show that nothing Garza alledly

told the detective led to the discovery of any evidence or new facts not already known by the police through the police's questioning of the witnesses at the scene of the shooting.

The detective made serious allegation during his direct examination by the prosecutor as to Garza having told him, the detective, that Garza's family would make sure that no witnesses would appear or testify. In particular, the detective gave the following testimony in front of the jury: S.F. Vol. II, p. 38,39,40:

LINE 17: Q: That's fine. What did Oscar tell you about -- was he drinking that night?

A: Yes, sir, he was drinking and taking roach pills. The latter part of the evening, just before the shooting he was drinking some beer and he took one and a half roaches.

Q: What about other drugs? Was he doing any other drugs?

A: I don't recall, sir, if he was doing anything. I think when he did go to throw the gun, he smoked a marijuana

P. 39,    cigarette.

Q: What did he tell you about the police arresting him?

A: He was surprised that the police would arrest him because he figured that people in, people in that neighborhood would not -- are not the type to press charges.

Q: Why wouldn't they press charges?

A: Because they have like a code among them,selves that says that we take care of each other and if there's a problem, we take care of the problem ourselves.

Q: Did he know that he left Joel Garcia dying?

A: Excuse me, sir?

Q: Did he know that he left Joel Garcia dying?

A: I don't know, sir, if he ever responded to that.

Q: Did he ever say, "After I shot him, I tried to help him" or something like that?

A: No, sir, he didn't say that.

-1-

Q: Did he ever say that what he did, he did it in self-defense?

A: No, sir, he never said that either.

Q: What did he mention to you about his cousins and his family?

A: He just mentioned that they were the type of people that would take care of the witnesses and the victim in case something came up. If they were to testify against him,

p. 40,    he would make sure that they wouldn't testify, that his family would make sure they would not testify.

Q: How long did the interview last?

A: Approximately an hour and a half, sir.

Q: Did the defendant sign the statement?

A: No, sir, he didn't sign the statement. He said that he would rather take his chances in court, and he refused to sign a written statement."

As the above setout portion of the statement of facts reflect, the detective gave sworn testimony as to what Petitioner Garza orally stated during the unrecorded custodial interrogation. The testimony by a highly credible law enforcement officer was that Garza drank alcohol, took a narcotic drug named "roach pills", and smoked marijuana, that Garza knew his relatives would kill all the witnesses should any witnesses appear and attempt to testify against Garza.

All of the detectives testimony was patently inadmissible as unrecorded oral statements, unsigned by Garza, given during a custodial interrogation. Yet, Garza's court appointed trial counsel did not make one single solitary objection as to the inadmissibility of the extremely prejudicial and inflammatory testimony as to Garza being a drug user and had family members that ran around killing witnesses when those witnesses attempted to testify against Garza.

As the statement of facts will conclusively establish, Garza

gave the detective no information that led to the discovery of any new unknown fact, or evidence, that would have established Garza's guilt. The inadmissibility of the oral custodial statement was clearly established at the time of Garza's jury trial as is stated in GIFFORD Vs. STATE, 630 S.W.2d 387 at 390 (Tx.App. 1982);

"The trial court erred in admitting into evidence the oral statements in which appellant admitted being inside the Lewter home and described the burglary. As a general rule, oral confessions are not admissible, JIMMERSON Vs. STATE, 561 S.W.2d 5 (Tx.Cr.App.,1978). If the State had filed a brief with us, we assume it would rely on Tex. Code   Crim. Pro.Ann. Art. 38.22,   Sec. 3(a)(c) (1979). Section 3(a)(c) allows the admissibility of an oral statement "which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property. . ." In other words, oral statements which contain information that leads to evidence of guilt are admissible in their entirety. MARINI Vs. STATE, 593 S.W.2d 709, 713 (Tx.Cr.App.,1980). We assume from its trial strategy the State would argue appellant's admission that a certain pair of cuff links was taken in the burglary serves to make admissible his oral statement that he was inside the home and his oral description of the burglary.
   Outside the hearing of the jury, in a hearing to determine the statement's admissibility, Detective Buntyn testified he was given sketches of the cuff links by Mrs. Lewter and he had sketches with him when he went to Corpus Christi to speak with Lykins. Lykins gave him the pawn slip listing the cuff links. Buntyn's offense report indicates when he saw the cuff links in the pawn shop , he immediately decided Mrs. Lewter would have to identify them. Detective Buntyn possessed all this information concerning the cuff links before appellant even mentioned them. During the hearing, Buntyn testified that appellant made the reference to the cuff links, admitted being inside the house and described the burglary during an interview on April 4. Detective Buntyn took Mrs. Lewter to Corpus on April 7 and at that time she positively identified the cuff links as belonging to her family. Appellant's admission that the cuff links were taken in the burglary led Buntyn to nothing new; Buntyn already knew that cuff links were taken in the burglary and he had already located them. The cuff link reference did not lead Buntyn to stolen property and hence cannot serve to make admissible the balance of the oral

statement. SCOTT Vs. STATE, 564 S.W.2d 759 (Tx.Cr.App.1978); SMITH Vs. STATE, 514 S.W.2d 749 (Tx.Cr.App.,1974). The oral statement should have been suppressed.

Our decision is bolstered by the fact that when Buntyn later testified before the jury, he stated that appellant admitted being inside the Lewter home and described the burglary during a separate, later interview. In the version heard by the jury, Buntyn testified the interview in which appellant admitted being inside the house and described the burglary took place several days AFTER Mrs. Lewter had positively identified the cuff links. Because Mrs. Lewter had identified the cuff links several days BEFORE appellant's admission, the art. 38.22, Sec. 3(a)(c)c argument is inapposite. Under either version of the facts, to admit the oral statement was error."

Also clearly established prior to Petitioner Garza's jury trial was the holding in ROMERO Vs. STATE, 800 S.W.2d 539 (Tx.Cr.app.,1990) which involved a pre-trial motion to suppress an unrecorded oral custodial confession or statement. The trial court granted the defense's motion to suppress the statement in that the trial court found it to have violated Art. 38.22, Sec 3(a)(c), Tx. Code Crim. Proc. Ann.. The prosecution filed an interlocutory appeal to the intermediate court of appeals which overruled the below state district court. The Court of Criminal Appeals then reversed the intermediate court's reversal of the trial court's suppression of the inadmissible custodial statement.

Petitioner Garza's court appointed attorney filed no pretrial motion to suppress as did the attorney in ROMERO, supra. Nor, did Garza's court appointed attorney make a timely incourt objection to the detective's testimony or request a hearing out side the presence of the jury. Consequently, the highly prejudicial and inflammatory oral custodial statement was put before the jury through the testimony of the detective Rubio.

Because Garza's oral statement was patently inadmissible and the court appointed trial counsel made no attempt at a pretrial suppression hearing, no request for a hearing out side the presence of the jury and made no timely or proper objections to the admissibility of the inadmissible oral statement defense counsel rendered ineffective assistance of counsel and on this error alone Garza's conviction could have been reversed yet the appellate counsel filed an <u>ANDERS</u>, brief and claimed Garza's appeal would be frivolous.

An out-of-time appeal should be granted in that Garza suffered the ineffective assistance of trial counsel for failure to object and ineffective assistance of appellate counsel for his failure to urge the clearly established error on direct appeal.

## GROUND OF ERROR #III

: PETITIONER GARZA WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN HIS ATTORNEY FAILED TO OBJECT TO THE PROSECUTION'S IMPEACHING GARZA THE INTRODUCTION OF AN EXTRANEOUS OFFENSE WHICH DID NOT INVOLVE MORAL TURPITUDE OR RESULT IN A FINAL CONVICTION.

Petitioner Garza's Sixth and Fourteenth Amendment rights to effective assistance of trial counsel when his trial counsel allowed the prosecutor to impeach Garza's credibility with the introduction of bad conduct evidence that was wholly unrelated to any issue concerning the attempted murder alleged in Garza's indictment.

### GARZA'S TESTIMONY

Petitioner Garza choose to take the stand and testify in his own defense. His defense was that after approaching and exchanging words with a third party (Eddie) over that third party seeing Garza's girl friend, the alleged victim, Joey interfered in the argument and

pulled a knife on Garza, and as Garza was backing up he fell in a pot hole and from the ground pulled a pistol and fired up at Joey who was standing over Garza with a knife. The following is an excerpt from Garza's testimony showing the prosecutor impeaching Garza's testimony with questions concerning an unadjudicated extraneous offense that did not involve moral turpitude;

See S.F., Volume IV of V, pages 332 - 334, which reflect as follows; page 332,

Line 24: Q: You had been after Eddie all week long, hadn't you?

A: Yes, sir.

P. 333,    Q: Why?

A: Because of my Girl Friend.

Q: Who was your girl friend?

A: Becky Diaz.

Q: She had broken up with you, hadn't she?

A: We were just mad.

Q: So you had broken up, yes or no?

A: We were just mad. No, we weren't talking. We were just mad for a while.

Q: She was seeing Eddie?

A: I don't know that, sir.

Q: Well then, why were you after Eddie?

A: She told me no.

Q: Then why were you after Eddie, then, if she told you no?

A: Some friends of mine told me that Eddie was at her house, used to go to her house and joey.

Q: Why were you mad at each other, you and Becky?

A: Because Becky found out I was going out with my neighbor.

Q: What neighbor?

A: Brenda Hernandez, her name is.

Q: What about Brenda?

A: I was going out with her the same time with Becky.

Q: Oh, you were two-timing Becky?

A: Yeah, I was going out with my neighbor and she found

P. 334,    out, and that's why she was mad at me for that time.

Q: IS THAT REASON ENOUGH TO GO OVER TO HER HOUSE AND START STRANGLING HER?

A: I NEVER DID THAT, SIR.

Q: YOU NEVER DID THAT?

A: NO, SIR.

Q: YOU'RE SURE?

A: I DIDN'T STRANGLE. WE WENT AND ARGUED.

Q: YOU KNOW YOU'RE ALSO FACING AGGRAVATED KIDNAPPING AND ASSAULT CHARGES IN THAT CASE, DON'T YOU?

As the statement of facts conclusively establishes, the prosecutor introduced a collateral extraneous offense, i.e., aggravated kidnapping and assault charges in an attempt to impeach Garza's testimony which involved his self-defense claims in the charged attempted murder of the alleged victim Joey. The same statement of facts well reflect that Garza was not tried for that alleged aggravated kidnapping or the assault on someone named Becky.

The law in effect at the time of Garza's trial was well established and that well established law strictly forbid the introduction and impeaching of an accused credibility by the introduction of unadjudicated extraneous offense evidence or offenses that did not involve moral turpitude.

The Texas Court of Criminal Appeals has specifically addressed the introduction of unadjudicated extraneous offense evidence impeaching a defendant's credibility. That Court in ALEXANDER Vs. STATE, 740 S.W.2d 749, at 763 (1987) teaches as follows:

"Under the provisions of Article 38.29 V.A.C.C.P., the fact that a witness, an accused or otherwise, has been charged with an offense is inadmissible for the purpose of

impeaching him as to his credibility unless the charge has resulted in a final conviction for a felony or an offense involving moral turpitude, and even then it must not be too remote. (case citings omitted)
**********************

It should be borne in mind, however, that "it has long been the law of this state that proof of either mere accusations, or specific acts of misconduct, is inadmissible to effect the credibility of the accused or any other witness. HOFFMAN Vs. STATE, 514 S.W.2d 248 (Tx.Cr. App.,1974); GARCIA Vs. STATE, 454 S.W.2d 400 (Tx.Cr.App.,1970) . . . ."
**********************

In the instant case the appellant, after relating his alibi defense, was properly impeached with two prior felony convictions, arson in 1972 and involuntary manslaughter in 1975. **The State was not satisfied with that impeachment and sought further to show an extraneous act or specific act of misconduct** - that of falsifying a statement about his prior convictions when purchasing a firearm (revolver) several months before the alleged offense in 1981. A pistol or revolver was not shown to have been used in the alleged offense, nor was it found in the van or elsewhere. In fact, appellant explained that it had been taken from his car before the alleged offense.

**The State cannot open the door to matters not otherwise admissible and then prove up the collateral events, unless the events themselves were independently admissible. FLANNERY Vs. STATE**, 676 S.W.2d 369 (Tx.Cr.App.1984). See also SHIPMAN Vs. STATE, 604 S.W.2d 182 (Tx.Cr.App.,1980); HATLEY Vs. STATE, 533 S.W.2d 27 (Tx.Cr.App.,1976).

In MORENO Vs. STATE, 711 S.W.2d 382 (Tx.App.14th Dist.,1986), the defendant was convicted of attempted capitol murder of a police officer. The evidence showed the intoxicated defendant armed with a hunting knife lunged at the police officer who shot him twice. While testifying in his own defense, the court permitted the State, over objection, to cross-examine the defendant about prior acts of misconduct. He was asked if he had previously owned guns and fired guns within the apartment complex where the alleged offense occurred. The defendant could not recall having fired a gun within the apartment complex. The State then brought rebuttal witnesses to show otherwise.

In reversing the conviction in part on this basis, the Court noted the State made no attempt to show the line of questioning was material or relevant to the issue at hand, nor did the State show that the evidence in any way established the scheme, motive, intent, etc. The defendant was not charged with the collateral offenses, much less convicted, and their use for impeachment was held error. **FURTHER, THE COURT NOTED THAT THE STATE IMPEACHED THE DEFENDANT ON SOME COLLATERAL ISSUE BROUGHT OUT BY THE**

STATE'S OWN CROSS-EXAMINATION OF THE DEFENDANT AND CITED FLANNERY Vs. STATE, supra.

MAULDIN Vs. STATE, 165 Tex. Cr. R. 405, 308 S.W.2d 36 (1957), involved a murder prosecution where the defendant was shown to have shot the deceased with a gun. The defendant testified he did so in defending himself and the gun "went off" when he struck the deceased, and that he had no intent to kill. ON CROSS-EXAMINATION THE STATE ELICITED FROM HIM THAT HE NEVER CARRIED A KNIFE: THEN OVER OBJECTION, HE WAS ASKED AND ADMITTED HE HAD "GOTTEN IN TROUBLE OVER CARRYING A KNIFE," AND FILED ON FOR AGGRAVATED ASSAULT. HE DENIED HE HAD CUT MARVIN BOOKER OR DID A "LITTLE CARVING" ON CURTIS HARRIS.

The Court in reversing the conviction in MAULDIN, noted that having elicited from the defendant on cross-examination that he never carried a knife did not authorize the State to impeach him on the matter. The shooting was with a gun, and carrying a knife was not shown to have any connection with the deceased. The Court held that whether the defendant ever carried a knife was immaterial to any issue of the case, and was impeachment upon an immaterial matter."

In the instant case the appellant admitted, although reluctantly, that he had been twice previously convicted. The fact, however, that he may have lied about those convictions on another occasion was an immaterial matter. In impeaching him on this fact the State was permitted to show a specific act of misconduct, the illegal or improper acquiring of a firearm by making a false statement. The appellant was not charged, much less convicted of the collateral offense or offenses, and the use thereof for impeachment was improper under article 38.29, supra. The State made no effort to show that the line of questioning was material to any issue in the case, nor did the State show that it in any way tended to establish prejudice, interest, bias or motive of the defendant in testifying as he did. No other exception above discussed was shown. There can be little doubt that the probative value of this interrogation of the appellant concerning collateral events was far outweighed by its oberwhelming prejudicial effect. MORENO, supra. The evidence was improperly admitted over timely objection."

An intermediate Texas appellate court also held that extraneous unadjudiciated offenses or evidence of specific bad acts or conduct are not admissible as impeaching evidence. In MORENO Vs. STATE, 711 S.W.2d 382, at 384 (Tx.App.,14th Dist.,1986), that court teaches as follows:

"The State made no attempt to show that the line of questioning was material or relevant to the issue at hand, nor did the state show that it in any way established scheme, motive, design or intent. Article 38.29 of the Texas Code of Criminal Procedure provides in part that the fact that a defendant in a criminal case is or has been charged with the commission of a crime **SHALL** not be admissible in evidence for the purpose of impeachment unless a final conviction has resulted. In this case, appellant was not even charged with these collateral offenses, much less convicted; therefore, their use for impeachment purposes was error. CLARK Vs. STATE, 693 S.W.2d 35 (Tx.App. 1st. Dist., 1985). See also CROSS Vs.STATE, 586S.W.2d 478 (Tx.Cr.App.,1979) and ALBRIGHT Vs. STATE, 486 S.W.2d 97 (Tx.Cr.App.,1972). **THE ERROR IS FURTHER COMPOUNDED WHEN THE STATE CALLS A WITNESS TO IMPEACH THE APPELLANT ON SOME COLLATERAL ISSUE BROUGHT OUT BY THE STATE'S OWN CROSS-EXAMINATION OF THE APPELLANT.** See also, CLARK Vs. STATE, 693 S.W.2d at 38. See also SHIPMAN Vs. STATE, 604 S.W.2d 182 (Tx.Cr.App.,1980) and HATLEY Vs.STATE, 533 S.W.2d 27 (Tx.Cr.App.,1976). **THE STATE CANNOT OPEN THE DOOR TO MATTERS NOT OTHERWISE ADMISSIBLE, AND THEN PROVE UP THE COLLATERAL EVENTS, UNLESS THE EVENTS THEMSELVES WERE INDEPENDENTLY ADMISSIBLE,** FLANNERY Vs. STATE, 676 S.W.2d 369 (Tx.Cr.App.1984). There can be no doubt the the probative value of any questioning of appellant concerning such collateral events was far out weighed by its overwhelming prejudicial effect."

Petitioner Garza's trial lawyer file no pre0trial motion in Limine preventing the prosecution from introducing any such extraneous unadjudicated offenses or specific bad acts or conduct evidence, nor did the defense attorney make any type of timely or proper objection, during trial, when the prosecutor introduced the extraneous bad conduct evidence during the cross-examination of Garza. In light of ALEXANDER, and MORENO, supra, which was clearly established law at the time of Garza's trial, Garza's trial attorney rendered ineffective assistance of counsel by failing to object or in any way seek a mistrial or any type of curative instructions.

The evidence amounted to two sets of neighborhood gangsters in a swearing match as to who the aggressors were and the facts as to

self defense were disputed. The introduce of extraneous bad acts evidence involving aggravated kidnapping and aggravated assault charges was devastating to Garza's credibility as to the self defense question. Garza's trail counsel was ineffective for failing to object and Garza's appellant counsel was ineffective for failing to recognize an automatic reversible error and filing a frivolous ANDERS brief instead of a merits brief with the above error argued.

Garza received ineffective assistance of appellate counsel, and therefore he should be **GRANTED** an out-of-time appeal with effective assistance of counsel so the above errors made be properly g/briefed and argued on a direct appeal.

**GROUND OF ERROR #IV:**

PETITIONER GARZA RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN HIS ATTORNEY FAILED TO OBJECT TO THE PROSECUTION, ON CROSS-EXAMINATION, IMPEACHING GARZA'S CREDIBILITY WITH UNAJUDICATED BAD ACTS EVIDENCE, OR COLLATERAL CONDUCT, AND THEN CALLING REBUTTAL WITNESS TO PROVE UP THE COLLATERAL EVENT.

The instant ground of error stems from the above improper use of a collateral event to impeach Garza's credibility during his testimony in his own defense.

The setout verbatim testimony from S.F., Vol. IV of V, pages 333, 334 and 335 above is incorporated herein by reference in that said testimony contains the prosecutions attempt to elicit evidence of a collateral event that allegedly involved Garza having been charged with aggravated kidnapping and aggravated assault on his girlfriend Becky Diaz, a collateral event that had nothing whatso ever to do with the instant charge of attempted murder on Joey.

After having, during cross-examination of Garza, opened the

door to the collateral matter the prosecution then, during the State's rebuttal, called Officer Olsson, a deputy sheriff and proceeded to prove up the alleged burglary, aggravated kidnapping and aggravated assault of Becky Diaz. The following is Officer Olsson's rebuttal testimony: S.F., Vol. IV of V, pages 350, 351, 352;

P. 350, Line 18;

      Q: By Mr. Valle: How is it that you are familiar with the defendant Oscar Garza?

      A: I arrested him on May 13th.

      Q: What did you arrest him for?

      A: Burglary and assault.

      Q: Who did he assault?

      A: Becky Diaz.

      Q: Where does Becky Diaz live?

P. 351,   A: On Morris road.

      Q: How did he assault Becky Diaz?

      Mr. Marchan: Excuse me, your Honor. At that point I think it goes beyond the area of rebuttal. His character trait -- he's already testified as to what he was arrested for.

      I believe that the details would be inappropriate to bring into this case. He's been arrested for the crime. That's what has been charged. I don't think there's any relevance of him getting into the details of it.

      THE COURT: Mr. Valle?

      MR. Valle: Your Honor, I've got Officer Olsson on the stand to show that he indeed has beaten up Becky Diaz severely, and he says he has only argued with her and never beat her up.

      THE COURT: I'll allow it. Be overruled.

      Q: BY MR. VALLE: When did he assault Becky Diaz?

      A: The first time, that was on the 23rd -- actually the 22nd and the 23rd. And there were two more times after that. The 24th and 26th, I think it was.

      Q: What month are we talking about?

A: May.

Q: And you investigated --

Q: No. I'm sorry, that was April.

P. 352,  Q: And you investigated the case?

A: Yes, I did.

Q: Did you take any -- did you have the occasion to take pictures of Becky Diaz?

A: Yes, I did.

Q: And did you bring those photographs here with you today?

A: Yes, I did.

Q: Could I see those? (short pause). Officer, I show you what has been marked as State's Exhibits 14 through 17 and ask if you recognize these Exhibits.

A: Yes, I do.

Q: What are they?

A: These are photographs I took of Becky.

Q: Do these photographs fairly and accurately depict the way Becky Diaz is shown in that?

A: Yes, they do.

Q: Are there any changes to those pictures of any kind?

A: No, sir.

Q: And those are the same ½pictures that you took during your investigation of the assault case?

A: Yes.

    MR. VALLE: Before I offer them into Evidence. I'd like to show him Exhibit No. 6.

As the above portions of the statement of facts reflect, not only did the prosecutor open the door on a collateral matter during the cross-examination of Garza the prosecutor introduced a Sheriff's Deputy during the State's rebuttal who gave extensive testimonial evidence as to that collateral bad conduct matter and then compounded the prejudicial effect of the introduction of the collateral matter by introducing photographs of the alleged victim for a highly

inflammatory visual impact on the jury.

Garza's attorney made a half hearted objection as to relevancy but did not properly argue the objection or cite to the well established existing case law that strictly forbid the opening of the door on collateral bad acts evidence and then introducing evidence to prove up the illegally introduced bad acts allegations.

It cannot be disputed that the case law in this area of impeachment by collateral bad acts evidence was strictly forbidden.

Petitioner Garza will again point to MORENO Vs. STATE, 711 S.W.2d 382 (Tx.App.,14th Dist.,1986) which was clearly established law at the time of the instant trial. That Court specifically held:

"...THE ERROR IS FURTHER COMPOUNDED WHEN THE STATE CALLS A WITNESS TO IMPEACH THE APPELLANT ON SOME COLLATERAL ISSUE BROUGHT OUT BY THE STATE'S OWN CROSS-EXAMINATION OF THE APPELLANT. See also, CLARK Vs. STATE, 693 S.W.2d at 38. See also SHIPMAN Vs. STATE, 604 S.W.2d 182 (Tx.Cr.App.,1980) and HATLEY Vs. STATE, 533 S.W.2d 27 (Tx.Cr.App.,1976). THE STATE CANNOT OPEN THE DOOR TO MATTERS NOT OTHERWISE ADMISSIBLE, AND THEN PROVE UP THE COLLATERAL EVENTS, UNLESS THE EVENTS THEMSELVES WERE INDEPENDENTLY ADMISSIBLE, FLANNERY Vs. STATE, 676 S.W.2d 369 (Tx.Cr.App.1984). There can be no doubt the the probative value of any questioning of appellant concerning such collateral events was far out weighed by its overwhelming prejudicial effect."

It cannot be disputed that reversible error was committed by the prosecution by opening the door, during cross-examination of Garza, concerning the alleged aggravated kidnapping and aggravated assault of Becky Diaz in that when the prosecutor asked Garza if he had assaulted Diaz and Garza responded with a no the prosecutor was bound by that response and was strictly forbidden from attempting to contradict that response. It was further reversible error to introduce during the Stare's rebuttal an officer's testimony attempting to prove up the forbidden collateral bad acts allegation,

and all of which was prejudicially and inflammatorily compounded by the introduction of photographs of Becky Diaz strict for their inflammatory visual impact on the jurors. See also;

SHIPMAN Vs. STATE, 604 S.W.2d 182 (Tx.Cr.App.,1980)

"When witness is cross-examined on collateral matter, cross-examining party may not then contradict the witness' answer.
Matter is "collateral matter" if cross-examining party would not be entitled to prove such matter as part of his case tending to establish his plea."

Petitioner Garza was deprived of effective assistance of trial counsel when that trial counsel failed to effectively object and properly argue the objection under the current well established case law that strictly forbid the impeachment by introduction of collateral unadjudicated bad conduct and acts. Trial counsel was further ineffective for failing to forceably object to the introduction of Officer Olsson's testimonial evidence during rebuttal as to the opening of the door to the alleged collateral bad conduct and bad acts involving the alleged assault, burglary and kidnapping of Becky Diaz.

Petitioner Garza was further deprived of effective assistance of appellate counsel in that the above error was an automatic reversal of the conviction in that the entire trail amounted to a swearing match between two groups of less than credible people and it cannot be reasonably determined that the introduction and testimonial proof of the extraneous collateral bad acts and conduct on the part of Petitioner was not the factor that pushed to juror to far in favor of the prosecution, and therefore was not harmless error. The failure to argue the error on a Merit brief instead of

the filing of a frivolous <u>ANDERS</u>, brief was ineffective assistance of appellate counsel of the first magnitude and demands that Garza be afforded an additional out-of-time direct appeal so that the above and foregoing legitimate and valid grounds of error may be argued under the law in effect at the time of Garza's trial and appeal.

### PRAYER

**WHEREFORE PREMISES CONSIDERED :** Petitioner Garza respectfully Prays that the Court would **GRANT,** in all things, the above and foregoing Habeas Corpus Petition seeking an out-of-time appeal due to the ineffective assistance of counsel on Garza's first appeal as of right, and that the Court would **GRANT** such other and further relief he may show himself entitled and the Court deems just and equitable.

Respectfully Submitted,

Oscar R. Garza, #568139
McConnell Unit
3001 So. Emily Dr.
Beeville, Texas - 78102

### CERTIFICATE OF VERIFICATION

I, Oscar Rodriguez Garza, being the same Oscar R. Garza in the above and foregoing Petition for Writ of Habeas Corpus (out-of-time appeal) and who in fact is the petitioner herein, do declare under penalty of perjury that I, Oscar R. Garza, am a State prisoner, currently confined in that portion of the McConnell Unit where I cannot get timely access to a notary public therefore I swear under penalty of perjury that all things stated and alleged by me in the above and foregoing Petition are true and correct. Signed and sworn to by me, Oscar R. Garza on this the 15th day of November, 2002.

Oscar R. Garza, Petitioner pro-se